Okey, C. J.
The plaintiff (Darling) and the defendant (Younker) were neighbors living in Coshocton county, about *489 fourteen miles from the town of Coshocton. They had known each other from boyhood, and both were dealers in live stock. The plaintiff had, in the hands of a firm engaged in soiling live stock at Pittsburgh, the proceeds of the sale of a lot of hogs which he had shipped to that city for sale ; and he also had a lot of hogs at Warsaw, in Coshocton county, which he wanted to send to Pittsburgh for sale by the same firm. Being unable to leave home by reason of sickness in his family, he employed the defendant to drive the hogs from Warsaw to Coshocton, take them from Coshocton to Pittsburgh by car, deliver them to the firm referred to for sale, receive from the firm the proceeds of the sale of both lots, bring such proceeds to Coshocton, there pay Stewart $1,200, and then carry and deliver to him, the plaintiff, the balance.
The hogs were shipped in a car at Coshocton, on December 23, 1874, the defendant taking passage in the caboose. Fink-bone, of Fairfield county, also a dealer in live stock, had a lot of hogs in cars of the same train, which he was taking to Pittsburgh for sale, and he and the defendant became acquainted in the caboose and stopped at the same hotel in Pittsburgh. The hogs taken by Finkbone, as well as those taken by the defendant, were sold the next day (December 24). In the afternoon of the same day, a member of the firm which sold the stock went with the defendant to one of the Pittsburgh banks, where the sum of $3,100.54, being the whole amount due to the plaintiff, was paid to the defendant. The money consisted of four bank bills, each for $500, and other bills of smaller denomination, and fifty-four cents in change. The defendant folded the bills in a piece of newspaper, and placed the roll in a pocket in the inside of his vest, and left the bank. Soon afterward, the amount due to Finkbone, for his hogs, being about $3,000, was paid to him at the si me bank, but h was unable to obtain at the bank any bill of a larger denomination than $50.
The defendant and Finkbone took passage on that evening at Pittsburgh, in the same passenger car, and came together as far as Coshocton, arriving there about ten o’clock at night. The defendant stopped at Coshocton, and Finkbone remained *490 in tlie car until he reached Kirkersville, which is near his residence. On the way from Pittsburgh to Coshocton, the defendant and Finkbone sat together, conversing about the live stock business. Finkbone informed the defendant that he had tried to get larger bills, but failed. The defendant asked him if it would be an accommodation if he would let him have one $500 bill, and Finkbone said it would. About half the seats in the car were occupied, chiefly the middle seats. Finkbone took out his money, but at the .suggestion of the defendant, they went to the front part of the car, to get as far as possible from the other passengers,, and have the benefit of the light, and sat down together in one of the front seats. Finkbone then took from his package ten $50 notes, and handed them to the defendant, who took from the package in his possession one of the $500 notes, handed it to Finkbone, put the ten bills in the place of the bill he had given to Finkbone, and restored the package to his inside vest pocket, taking care that there should be no mistake in making the exchange, and that none of the bills should be lost. This was about an- hour before the train arrived at Coshocton.
The defendant, arriving at Coshocton, as already stated, in the night, it became necessary for him to remain at a hotel till morning. The banks were closed, of course, and it does not appear whether there was or was not a safe in the hotel where he stopped. There was, however, a hardware store- in Coshocton, owned by a firm in which a brother of the plaintiff was a partner, and the defendant was then aware of the fact that the plaintiff was in the habit of depositing considerable sums of money in the safe of that firm, which they kept in the store. The defendant went directly from the depot to the store, which lie found still open, Bonnett, a nephew of the plaintiff, and employee of the firm, being there alone. The defendant turned and was about to leave the store, when Bonnett inquired what was wanted, and the defendant informed him that he had a package of money belonging to the plaintiff, stating the amount, which he desired to have placed in the safe. Bonnett said he could attend to it, and took the package and locked it in the safe, and the defendant then *491 went to Ms hotel, leaving Bonnett in the store. From the' time the defendant received the money at the bank until he handed it to Bonnett in the store, it had not been out of his pocket, except when he exchanged the bills, as already ex-, plained, on the train.
The next morning (December 25) the defendant went to the hardware store, and Bonnett, at his request, opened the safe and took therefrom the package of money and handed it to him. On counting the money, in the presence of Bonnett and the plaintiff’s brother, it was ascertained that one of the $500 bills was missing, the balance of the money, including two $500 bills, being there. The defendant paid to Stewart $1,200, in accordance with the instruction already mentioned, and on the same day (December 25) delivered to. the plaintiff Stewart’s receipt and $1,400.54, in money, and informed the plaintiff of all the facts here stated, including the exchange of bills, the deposit in the safe, and the loss of the $500 note.
Such, in substance, is the testimony of Younker, as delivered in the court of common pleas of Coshocton county, on the triid of an action brought by Darling against him to recover the sum of $500. His evidence was corroborated by the testimony of Finkbone, and the jury, believing the defendant’s story, found a verdict in his favor; the court, after overruling a motion for a new trial, rendered a judgment on the verdict; the district court affirmed the judgment, and this petition in error was filed to reverse both judgments.
During the trial, evidence was also offered to show that the defendant was confused at the time the money was counted in the store; that he then stated that in the money paid to him at the bank there were three $500 bills; and that he also stated that he did not have the money out of his pocket from the time he placed it there in the bank until he took it out in the hardware store. But an explanation as to these statements was furnished, showing that they, as well as the confusion, were caused by the defendant’s excitement on discovering the loss, and the statements were corrected by him on the same day. Furthermore, it was shown that he had said that he *492 ■would pay the amount so lost to the plaintiff, but that he must have the matter investigated; and when the plaintiff brought suit, the defendant withdrew all proposals looking to a settlement. There was also evidence tending to show that the exchange of money on the cars was not an unusual occurrence.»
The foregoing embraces all the evidence, except with respect to two or three matters which seem to be wholly unimportant. What the facts in relation to the missing bill really are, may never be known. Whether the note was dropped in the cars, or whether somebody was dishonest, are matters of conjecture. The defendant is quite certain no mistake was made at the bank. In giving to the testimony a construction consistent with that honesty of the defendant which the plaintiff, with an acquaintance of forty years, believed he really possessed when he employed him to perform the service, we are not prepared to say the jury erred.
If, on learning that the defendant had taken one of the notes from the package, the plaintiff had treated the act as a conversion, and brought suit to recover the whole amount so received by the defendant at the bank, a different question might have been presented. It was the duty of the defendant to receive the money from the commission merchants at Pittsburgh, carry it to Coshocton, there pay to Stewart $1,200, and take the balance of the money to the plaintiff and deliver it to him. As Bigelow, C. J., says, in Kent v. Bornstein, 12 Allen, 342, “ any act or dealing with the money beyond this was outside of the scope of his employment. He had no authority to enter into any contract concerning the money in his hands, or to exchange it for other money, with third persons.” And see Phillpott v. Kelley, 3 Ad. & El. 106; Clendon v. Dinneford, 5 C. & P. 13; Greenwald v. Metcalf, 28 Iowa, 362; Edwards on Bailments, §§ 67, 97. But we do not find it necessary to decide as to the law that would have been applicable if the plaintiff had take*', .he course indicated. On being informed of the loss, the plaintiff accepted, as cash, the receipt of Stewart and the balance of the money in the defendant’s hands, making $2,600.54, which he knew included the bills given by Finkbone in exchange for one of the $500 *493 bills, and the plaintiff brought suit against the defendant for the missing §500 bill. This, therefore, was a complete ratification by the plaintiff of the act of the defendant to that extent. Ewell’s Evans on Agency, 94.
No action could be maintained for the conversion of the missing bill, nor as for money had and received, the jury having found that there was no misappropriation of the bill by the defendant, and the verdict in that respect not appearing to be wrong. Sturgis v. Keith, 57 Ill. 451; 11 Am. Rep. 28; Perry v. Roberts, 3 Ad. & El. 113. But where an agent is guilty of negligence, whereby the money of his principal is lost, an action may be maintained on that ground. And here the question is whether we can say, as matter of law, that the acts of the defendant, in making the exchange in the ear and the deposit in the safe, afford a ground of recovery, as to the missing $500 bill, because of the defendant’s negligence, and without regard to the question of actual good or bad faith. But, as to the deposit in the safe, we can see in it nothing objectionable, under the circumstances. It was the safe in which the plaintiff made liis own deposits of money, and the safe was in charge of the brother and nephew of the plaintiff. Indeed, the plaintiff made no complaint that such deposit had been made. The real question, therefore, is as to the alleged negligence in making such unauthorized exchange of money in the cars.
An agent is not an insurer for the safe delivery of money placed in his care to carry to his principal. No doubt, however, where he claims that money so intrusted to him is lost, the burden is upon him, whether the service be for or without reward (Anderson v. Foresman, Wright, 598; Ewell’s Evans on Agency, 327), to show that the loss was not occasioned by a want of that care, on his part, which men of ordinary prudence observe when clothed with such a trust. The real question, in every case where negligence is alleged, is, whether there has been a breach of duty, and that is to be determined from a consideration of all the facts. But here the question whether the acts of the defendant amounted to such negligence as would afford ground of recovery, was a question of fact and *494 not merely one of law. Cases can be found in which the question of negligence has been determined as one of law. See 28 Ohio St. 340; 35 Ohio St. 627; see, however, 13 Ohio St. 71, 72; 35 Ohio St. 57; Pierce on Railroads (ed. of 1881), 312, 314, et seg. But where the facts are in dispute, or the question is to be determined by inference from facts proved, the question is necessarily one of fact; nor can it be a question of law in any case, if reasonable men, unaffected by bias or prejudice, might disagree concerning the presence or absence of due care.
Judgment affirmed. |